UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUIS OJEDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 CV 7309 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| SHERIFF DONALD KRAMER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Luis Ojeda ("Ojeda") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Donald Kramer, Sheriff of Kane County ("Kramer"); James Lewis, Director of Kane County Jail ("Lewis"); Kathleen Sanchez, Medical Administrator of Kane County Jail ("Sanchez"); the Kane County Adult Justice Center ("Kane County Jail"); and the Kane County Sheriff's Office. Presently before us is a motion to dismiss Ojeda's second amended complaint for failure to state a claim upon which relief can be granted, filed by Defendants Kramer, Lewis, Kane County Jail, and Kane County Sheriff's Office. (Dkt. No. 34.)[1] For the reasons stated below, we grant in part and deny in part Defendants' motion.

**BACKGROUND**

At the motion to dismiss stage, we accept all well-pleaded allegations in the complaint as true unless they are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009);

---

[1] Defendant Sanchez has not moved to dismiss and is not involved in this motion.

*Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). Plaintiff Ojeda's claims stem from his time as a pre-trial detainee at the Kane County Jail from April 8, 2015 until August 28, 2015. (2d Am. Compl. (Dkt. No. 24) ¶ 10.) Ojeda alleges that Defendants Kramer and Lewis were personally aware that he had leukemia cancer and that he received incorrect dosages of medication while in their custody at Kane County Jail. (*Id.* ¶¶ 27, 33, 35, 41.) He asserts that both Kramer and Lewis failed to intervene to correct the dosages. (*Id.*) He further alleges that he experienced jaundice, dehydration, nausea, vomiting, indigestion, stomach and abdominal pain, severe discoloration of his urine, mucus in his stool, and other medical symptoms as a result of the improper dosages. (*Id.* ¶¶ 28, 36.) Ojeda contends Kramer and Lewis were aware of his worsening symptoms and his repeated requests for medical attention or treatment, and also knew that he received no medical attention or treatment. (*Id.* ¶¶ 28–31, 36–39.) Lastly, Ojeda alleges that Defendants Kramer and Lewis failed to provide adequate medical staffing and training, used reprimands and promotions to discourage staff from arranging medical treatment, and rewarded staff members who withheld treatment from detainees. (*Id.* ¶¶ 32, 40.)

On August 19, 2015, Ojeda filed a pro se complaint under § 1983, and on November 10, 2015 we dismissed that complaint without prejudice and appointed counsel to represent Ojeda. (Dkt. No. 8.) After Ojeda filed an amended complaint on January 8, 2016 (Dkt. No. 10), Defendants moved to dismiss that complaint on July 28, 2016. (Dkt. No. 18.) Ojeda then filed a motion for leave to file a second amended complaint on September 1, 2016, which we granted on September 7, 2016. (Dkt. Nos. 20, 23.) Ojeda filed the operative second amended complaint (hereinafter "complaint") on September 7, 2016, alleging Defendants Kramer, Lewis, Sanchez, the Kane County Jail, and the Kane County Sheriff's Office are liable

2

pursuant to § 1983 because they violated his constitutional rights as a result of their deliberate indifference to his serious medical needs. (Dkt. No. 24.)

On November 22, 2016, Defendants Kramer, Lewis, Kane County Jail, and Kane County Sheriff's Office moved to dismiss Ojeda's complaint pursuant to Fed. R. Civ. P. 12(b)(6) urging that: (1) the complaint contains insufficient allegations regarding Kramer or Lewis' personal involvement, such that it fails to plausibly state a claim for their deliberate indifference to his medical needs; (2) the complaint does not allege sufficient facts to support a widespread policy of denying medical care to detainees, and therefore Plaintiff cannot sustain his claims against the Defendants in their official capacities pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018 (1978); and (3) the Kane County Jail is not a suable entity. (Mem. ISO Mot. to Dismiss ("Mem.") (Dkt. No. 35) at 3, 5–6.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Katz-Crank*, 843 F.3d at 646. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 540 U.S. at 555, 127 S. Ct. at 1964–65). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw

all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## DISCUSSION

Plaintiff Ojeda brings his claims under 42 U.S.C. § 1983, alleging Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. (2d Am. Compl. ¶ 1.) Ojeda was a pretrial detainee at Kane County Jail; therefore, his § 1983 claims arise under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Nonetheless, "there is little practical difference between the two standards." *Budz*, 398 F.3d at 910 (citing *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)) (internal quotations omitted); *see also Heard v. Sheahan*, 148 F. App'x. 539, 540 (7th Cir. 2005) (explaining that the Fourteenth Amendment analysis is "practically identical to the Eighth Amendment standard of deliberate indifference"). Accordingly, "we use the Eighth Amendment case law as a guide in evaluating his claims." *Budd*, 711 F.3d at 842; *accord. Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012).

### I. SECTION 1983 CLAIMS AGAINST DEFENDANTS KRAMER AND LEWIS IN THEIR INDIVIDUAL CAPACITIES

Defendants first move to dismiss Ojeda's claims against Defendants Kramer and Lewis in their individual capacities (Counts I and II). Defendants argue that Plaintiff pled insufficient facts regarding Kramer and Lewis' personal involvement to plausibly state a claim for their deliberate indifference to his medical needs. (Mem. at 3.) The Due Process Clause of the Fourteenth Amendment protects pretrial detainees "against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) ("The Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment, as incorporated by the Fourteenth Amendment, to impose a duty on states to provide adequate medical care to incarcerated individuals." (internal quotations omitted)). Thus, "[p]rison officials violate the Constitution if they are deliberately indifferent to a prisoner's serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291).

"A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). The plaintiff must allege "an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). Here, there is no dispute at the pleading stage regarding whether Plaintiff has sufficiently alleged his leukemia was a serious medical condition. Rather, Defendants contend Plaintiff has not adequately alleged they were deliberately indifferent. To satisfy this subjective component, a prisoner must demonstrate that the relevant official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct., 1920, 1979 (1994); *see also Perez*, 792 F.3d at 776 ("Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk."). "The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard." *Perez*, 792 F.3d at 777.

Counts I and II concern the liability of Defendants Kramer and Lewis, the County Sheriff and the Director of Corrections, respectively. "Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or lay persons." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Generally, non-medical prison officials are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 990 (7th Cir. 2009); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (non-medical jail administrators are generally "entitled to defer to the judgment of jail health professionals" so long as they do not ignore a detainee). However, non-medical prison officials "may be found to be deliberately indifferent to a prisoner's serious medical needs if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a patient.'" *Flourney v. Ghosh*, 881 F. Supp. 2d 980, 990 (N.D. Ill. 2012) (quoting *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir.2008)). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks*, 555 F.3d at 594.

Counts I and II against Defendants Kramer and Lewis in their individual capacities state a cognizable § 1983 claim for deliberate indifference. Beyond alleging that Kramer and Lewis were personally aware of and disregarded a substantial risk of serious harm, the complaint specifically alleges that they were aware of detailed medical conditions and facts, such as Ojeda's initial leukemia diagnosis, improper dosages, worsening symptoms, and repeated, unaddressed requests for medical treatment. (2d Am. Compl. ¶¶ 27–31, 33, 35–39, 41.) Plaintiff alleges that he communicated to both Kramer and Lewis that he was receiving incorrect dosages of his medications, and that he was suffering from resulting symptoms including jaundice, dehydration, nausea, vomiting, indigestion, stomach and abdominal pain, severe discoloration of

6

his urine, and mucus in his stool. (*Id.* ¶¶ 14–16.) He also alleges that he communicated his requests for medical treatment to Kramer and Lewis. (*Id.* ¶¶ 17–18.) Furthermore, the complaint alleges that Defendants Kramer and Lewis discouraged staff from arranging medical treatment and rewarded staff members who withheld treatment from inmates. (*Id.* ¶¶ 32, 40.) Because these allegations are more than "threadbare recitals" of the § 1983 liability requirements, we accept them as true. *Iqbal*, 556 U.S. at 663, 129 S. Ct. at 1940; *Katz-Crank*, 843 F.3d at 646.

Defendants also argue that "[i]t is not plausible that a Sheriff and Director of Corrections would have actual knowledge of the day-to-day medical care of individual detainees . . . unless some specific event brought that to their attention." (Mem. at 4.) The plausibility standard "is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citation omitted) (emphasis added). Ojeda's complaint alleges that he "communicated" or "caused [his symptoms] to be communicated" to Kramer and Lewis. (2d Am. Compl. ¶¶ 17–18). Accepted as true, this allegation presents "more than a sheer possibility" of Kramer and Lewis' awareness of Ojeda's medical situation. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (finding plaintiff's complaint stated a valid claim where he alleged that each non-medical defendant had actual knowledge of his medical condition as a result of plaintiff's grievances and other correspondences); *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) ("[R]equests for relief which have fallen on deaf ears may evidence deliberate indifference."); *Boyce v. Johnson*, 13 C 6832, 2014 WL 3558762, at *3 (N.D. Ill. July 17, 2014) (denying defendants' motion to dismiss where plaintiff alleged he wrote a letter to non-medical defendants describing his inadequate treatment and thus finding plaintiff sufficiently pled that defendants had knowledge that medical personnel failed to treat plaintiff). Accordingly, we conclude that at this stage,

7

Ojeda has stated a plausible claim against Kramer and Lewis in their individual capacities under § 1983 for deliberate indifference, and we deny Defendants' motion to dismiss Counts I and II.

## II. *MONELL* CLAIMS AGAINST DEFENDANTS LEWIS, KRAMER, KANE COUNTY JAIL, AND KANE COUNTY SHERIFF'S OFFICE

### a. *Monell* Claim Against Defendant Lewis and Kane County Jail

In Count IV of the complaint, Ojeda alleges § 1983 liability against Director James Lewis in his official capacity and against the Kane County Jail. "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (citing *Monell*, 436 U.S. at 690, n. 55, 98 S. Ct. at 2035). As such, an official capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166.

As a division of the Kane County Sheriff's Office, the Kane County Jail itself is not a suable entity. *Castillo v. Cook Cty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993) (explaining that it would be proper for the plaintiff to sue the county itself, "rather than a subdivision thereof"); *Velázquez v. Kane Cty. Jail Adult Judicial Ctr.*, No. 13 C 0644, 2013 WL 523827, at *1 (N.D. Ill. Feb. 11, 2013) ("The jail is not, itself, a suable entity."); *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (explaining that entities "that do not enjoy a separate legal existence independent of the County and the Sheriff's office" are not suable entities). In addition, there is no need to bring official-capacity actions against Lewis, "for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167, 105 S. Ct. at 3106. Accordingly, we grant Defendants' motion to dismiss Count IV against Defendant Lewis in his official capacity and the Kane County Jail with prejudice.

### b. *Monell* Claim Against Defendant Kramer and Kane County Sheriff's Office

Defendants also argue that Count III[2] of the complaint, which alleges *Monell* liability against Defendants Kramer and the Kane County Sheriff's Office, contains "unsupported and boilerplate allegations" that "fail to rise to the required pleading standards." (Mem. at 5.) Specifically, Defendants contend that Ojeda alleges insufficient facts to support a widespread policy of denying medical care to detainees. (*Id*. at 6.)

"When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006), *as amended on denial of reh'g* (May 25, 2006) (citing *Graham*, 473 U.S. at 165-66, 105 S. Ct. at 3105). A local government entity may be sued under § 1983 where "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 690, 98 S. Ct. at 2036).

In defining a "wide-spread custom or practice, . . . there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance." *Id.* (citing *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) (internal quotations omitted)). Such a custom or practice "may take the form of an implicit policy or a gap in expressed policies, . . . or a series of violations to lay the premise of deliberate indifference." *Id.*; *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) (When a plaintiff chooses to

---

[2] Plaintiff's complaint includes two counts labeled "Count III"—one alleging a claim against Defendant Sanchez and one asserting the instant claim against Defendants Kramer and the Kane County Sheriff's Office. As Sanchez has not moved to dismiss the count against her and it is not presently at issue, we will refer to the *Monell* claim against Kramer and the Kane County Sheriff's Office as Count III.

9

challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference.").

Plaintiff Ojeda claims that as an official with final policy-making authority, Kramer implemented a pattern and practice of deliberate indifference to inmates' medical needs. (2d Am. Compl. ¶¶ 58–60.) He alleges that Kramer did so by providing inadequate medical staffing and training, by refusing to intervene to arrange for medical attention or to correct his dosages, and by using explicit and implicit means, such as reprimand and promotion, to discourage staff from arranging for emergency medical treatment for inmates, while rewarding those staff members who did comply with their expectations to withhold such treatment. (*Id*.) Ojeda alleges that as a result, he continually received improper dosages between April 8, 2015 and June 5, 2015, and between May 1, 2015 and June 6, 2015 received no medical attention in response to his "constant and diligent" complaints of worsening symptoms and requests for medical attention. (*Id.* ¶¶ 13–19.)

Accepting his allegations as true, Ojeda has adequately pled an implicit policy reflected in an alleged widespread practice of impeding detainee access to medication during the time he spent in the custody of Defendant Kramer and the Kane County Sheriff's Office. *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005). The sum of Plaintiff Ojeda's multiple allegations, taking place over the course of up to two months, do not constitute a "single incident" or "a random event." *Id.* at 380; *see also Hare v. Cnty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *1 (N.D. Ill. Dec. 15, 2014) (holding that plaintiff's complaint plausibly stated a claim for relief because it "allege[d] repeated instances of mistreatment" over a 25-day period "that, if proven to be true, constitute sufficient evidence of an implied policy or custom,"

and explaining that "in unique circumstances, many actions directed at a single individual can support the assertion of a widespread policy or custom"). If Ojeda's allegations are proven, they will constitute sufficient evidence that Defendant Kramer engaged in a "policy or custom" in his official capacity as Kane County Sheriff. *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037. We accordingly find that Ojeda has alleged sufficient facts to plausibly state a § 1983 *Monell* claim against the Kane County Sheriff's Office, and we deny Defendants' motion to dismiss Ojeda's *Monell* claims in Count III.

## CONCLUSION

For the above reasons, we grant Defendants' motion to dismiss Count IV against Kane County Jail and Defendant Lewis in his official capacity. The Kane County Jail is dismissed from this action. We deny Defendants' motion to dismiss Counts I, II, and III, which state claims against the Kane County Sheriff's Office and Defendant Kramer in his official capacity, along with claims against Defendants Kramer and Lewis in their individual capacities. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: April 5, 2017